# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JOY M. WOODRUM, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-12-214-FHS-SPS |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of the Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

The claimant Joy M. Woodrum requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). The claimant appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. As discussed below, the undersigned Magistrate Judge RECOMMENDS that the Commissioner's decision be REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations

implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity (RFC) to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on December 8, 1977, and was thirty-one years old at the time of the latest administrative hearing. She has an eleventh grade education and has past relevant work as a certified nurse's aide (Tr. 434). The claimant alleges she has been unable to work since June 18, 1999, due to manic depressive disorder, bipolar disorder, migraines, diabetes, lyme disease, asthma, fibromyalgia, back and leg problems, chronic anxiety, obesity, and carpal tunnel syndrome (Tr. 78).

## Procedural History

The claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and supplemental security income payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85, on May 5, 2004. Her applications were denied. ALJ Deborah L. Rose conducted an administrative hearing, at which time the claimant amended her onset date to May 5, 2004 and withdrew her claim for disability insurance benefits under Title II. The ALJ determined that the claimant was not disabled on March 28, 2007, but this Court reversed the Commissioner's decision on appeal in Case No. CIV-07-326-FHS-SPS and remanded the case for further proceedings. ALJ Michael A. Kirkpatrick held another administrative hearing and concluded that the claimant was not disabled in a written opinion dated December 21, 2009 (Tr. 420-36).

The Appeals Council denied review, so the written opinion dated December 21, 2009 is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He found the claimant retained the residual functional capacity ("RFC") to perform sedentary work as defined by 20 C.F.R. § 416.967(a), but could climb, balance, kneel, crouch or crawl only occasionally, and could not work in environments with concentrated exposure to irritants such as gas, dust, fumes and smoke (Tr. 425). The ALJ also found that with her mental impairments, the claimant could perform both simple and detailed tasks but not complex tasks (Tr. 425). The ALJ concluded that the claimant could not return to her past relevant work but was nevertheless not disabled because there was other work she could perform in the national economy, *i. e.*, touch-up screener, addresser and polisher (Tr. 435-36).

**Review**

The claimant contends that the ALJ erred in analyzing: (i) the medical opinion of her treating physician Dr. Shyla Butt, M.D.; (ii) the medical opinion of state examining physician Dr. John W. Hickman, Ph.D.; (iii) the impact of her obesity on her RFC at step four; and (iv) her credibility. The undersigned Magistrate Judge finds that the ALJ did fail to properly analyze Dr. Hickman's opinion, and the Commissioner's decision should therefore be reversed for further proceedings.

Dr. Hickman examined the claimant regarding her mental impairments on July 9, 2009 (Tr. 474-83). The claimant related that she has chronic anxiety and several panic attacks with hyperventilation each week, and that she took Flexeril, Vicodin, Xanax, lisinopril, potassium, and insulin (Tr. 474). Dr. Hickman administered a variety of tests, including the Mental Status Exam and Wechsler Adult Intelligence Test. He noted that the claimant "exhibited intermittent difficulty maintaining her concentration that produced lapses in her performance" and was self-critical (Tr. 475). Dr. Hickman also noted that the claimant's thought processes were tangential about half the time and she exhibited a blunted and constricted affect. The claimant's attention, concentration and memory were primarily in the extremely low average to low average range (Tr. 476-77). Her results on the Minnesota Multiphasic Personality Inventory-II revealed that she "endorsed a marked number of strange and unusual responses on the front and back portions of the test" which Dr. Hickman thought were "consistent with the amount of stress and turmoil she reported secondary to her multiple medical and psychiatric disorders, some of which are untreated because of her lack of medical insurance and financial resources" (Tr. 478). Dr. Hickman opined that the claimant had "average working memory functions but severely impaired verbal memory functions and low average visual memory functions" and "intermittent difficulty sustaining her concentration" (Tr. 478). Dr. Hickman's diagnoses included cognitive disorder, NOS, secondary to diabetes, bipolar disorder, anxiety disorder with panic attacks, and pain disorder associated with both psychological factors and a general medical condition (Tr.

478). Further, Dr. Hickman found that the claimant exhibited features of a histrionic personality disorder and had a GAF of 48, citing severe verbal memory deficits and marked mood and anxiety disorders (Tr. 478). Dr. Hickman indicated that the claimant's prognosis was guarded to poor, and that "her psychiatric and medical difficulties in combination with a histrionic personality disorder have fractured her fragile psychological defenses" (Tr. 479). Dr. Hickman also opined that the claimant met the criteria for Listings 12.02 and 12.04, and that she would need a payee if awarded benefits because of her untreated bipolar disorder (Tr. 479).

Dr. Hickman also completed a mental residual functional capacity form in which he found that the claimant would have marked limitations: (i) maintaining attention and concentration for extended periods; (ii) in sustaining an ordinary routine without special supervision; (iii) working in coordination with or proximity to others without being distracted by them; (iv) completing a normal workday or week without interruptions from psychologically-based symptoms; (v) performing at consistent pace without unreasonable and lengthy rest periods; (vi) accepting instructions and responding appropriately to criticism from supervisors; (vii) responding appropriately to changes in the work setting; and, (viii) traveling in unfamiliar places or using public transportation (Tr. 480-82). Dr. Hickman also found that the claimant would have moderate limitations: (i) carrying out detailed instructions; (ii) performing activities within a schedule, maintaining regular attendance and being punctual within customary tolerances; (iii) interacting appropriately with the general public; (iv) getting along with co-workers or peers without distracting

them or exhibiting behavioral extremes; and, (v) being aware of normal hazards and taking appropriate precautions (Tr. 480-81).

Social Security Ruling 96-6p indicates an ALJ "must consider and evaluate any assessment of the individual's RFC by a State agency medical or psychological consultant and by other program physicians and psychologists." 1996 WL 374180, at *4. Unlike medical opinions from a treating physician, an opinion from an agency physician is not entitled to special deference but must be evaluated for weight under the factors set forth in 20 C.F.R. § 416.927. *See* 20 C.F.R. § 416.927(c) ("Regardless of its source, we will evaluate every medical opinion we receive . . . [W]e consider all of the following factors in deciding the weight we give to any medical opinion."). The relevant factors are: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins,* 350 F.3d at 1300-01, *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001). While an ALJ is not bound by an opinion from a state agency physician, he cannot ignore it and must explain the weight he decides to give it in his decision. *Id*.

The ALJ discussed Dr. Hickman's findings at length but nevertheless erred in his analysis in several respects. First, the ALJ rejected Dr. Hickman's opinions regarding the claimant's mental limitations largely upon his own interpretation of the tests administered by Dr. Hickman. For example, the ALJ noted that he was unable to identify any of the "striking performance deficits" reported by Dr. Hickman, and that the claimant's anxiety did not interfere with her ability to complete the evaluation, which the ALJ likened to a work environment (Tr. 427). But Dr. Hickman found that the claimant exhibited severely impaired verbal memory functioning and low average visual memory functioning (based on her scores on the WMS-III, which addresses attention, concentration, and memory), and that the claimant had "difficulties with concentration, social avoidance, poor mood control, [and] impaired executive functioning" based on other psychological testing that he conducted (Tr. 478-79). The ALJ should not have rejected Dr. Hickman's opinions as to the claimant's medical impairments based on his own reinterpretation of the evidence. *See, e. g., Miller v. Chater*, 99 F.3d 972, 977 (10th Cir. 1996) ("The ALJ may not substitute his own opinion for that of claimant's doctor."), *citing Sisco v. United States Department of Health & Human Services*, 10 F.3d 739, 743 (10th Cir. 1993); *Kemp v. Bowen,* 816 F.2d 1469, 1476 (10th Cir. 1987) ("While the ALJ is authorized to make a final decision concerning disability, he can not interpose his own 'medical expertise' over that of a physician[.]"). *See also Winfrey v. Chater*, 92 F.3d 1017, 1022 (10th Cir. 1996).

Second, it is clear that the ALJ's rejection of Dr. Hickman's opinion was based upon improper picking and choosing among the evidence. For example, the ALJ noted

that the claimant's demeanor during the evaluation showed no agitation but ignored Dr. Hickman's finding that her affect was blunted and constricted and her mood was depressed and anxious (Tr. 476). Further, the ALJ noted that the claimant's speech was only mildly pressured and that her normal scores on the WAIS indicated that she was able to think abstractly and "perform the tests of concentration, persistence, and pace" (Tr. 427) but ignored Dr. Hickman's findings that her thought processes were tangential half the time, that she had difficulty maintaining concentration intermittently during the WMS-III, and that she had "severely impaired verbal memory functions and low average visual memory functions" (Tr. 478). It is well-established that an ALJ may not "pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability." *Haga*, 482 F.3d 1205, 1208 (10th Cir. 2007), *citing Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1219 (10th Cir. 2004). *See also Taylor v. Schweiker*, 739 F.2d 1240, 1243 (7th Cir. 1984) ("'[A]n ALJ must weigh all the evidence and may not ignore evidence that suggests an opposite conclusion.'"), *quoting Whitney v. Schweiker*, 695 F.2d 784, 788 (7th Cir. 1982).

Because the ALJ failed to properly analyze Dr. Hickman's opinions regarding the claimant's mental impairments, the decision of the Commissioner should be reversed and the case remanded for a proper analysis.

## Conclusion

The undersigned Magistrate Judge finds that correct legal standards were not applied by the ALJ and that the decision of the Commissioner is therefore not supported by substantial evidence. Accordingly, the Magistrate Judge RECOMMENDS that the ruling of the Commissioner of the Social Security Administration be REVERSED and the case REMANDED for further proceedings not inconsistent herewith. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 13th day of September, 2013.

Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma